BARRETT *v.* ST. LOUIS SOUTHWESTERN RAILWAY COMPANY.

Opinion delivered December 24, 1921.

1. TRIAL—QUESTION FOR JURY.—Where plaintiff delivered property to a carrier to be transported to a third person, pursuant to a contract of sale, it was a question for the jury whether the intention of the parties was that the transportation should be completed and the delivery made to the consignee before the sale is consummated.

2. CARRIERS—RIGHT TO NOTICE OF CLAIMS.—Under a stipulation in a bill of lading making an exception in the requirement of notice of loss "where the loss, damage or injury complained of is due to delay or damage while being loaded or unloaded, or damaged in transit by carelessness or negligence," losses or damages in transit are excepted from the requirement of notice.

3. CARRIERS—DAMAGE TO FREIGHT IN TRANSIT.—Evidence *held* sufficient to sustain a finding of negligence in the transportation of perishable freight.

Appeal from Monroe Circuit Court; *George W. Clark,* Judge; reversed.

*Bogle & Sharp,* for appellant.

Plaintiff was not required to file a claim. 63 Ark. 332; 105 Ark. 406.

The title never passed to the consignee. The question of the intention of the parties should have been submitted to the jury. 111 Ark. 524; 112 Ark. 117; 118 Ark. 21; 121 Ark. 290; 123 Ark. 67; 128 Ark. 128; 137 Ark. 401.

*Thos. B. Pryor; Lamb & Frierson* and *Daggett & Daggett,* for appellees.

The failure to file a claim as provided in the bill of lading is a complete bar to plaintiff's right to recover. 36 Sup. Court Rep. p. 542; 148 Ark. 118.

The plaintiff was not a proper party to bring the action. 105 Ark. 53; 128 Ark. 124.

McCULLOCH, C. J.   This is an action to recover the value of a consignment of sweet potatoes delivered to the St. Louis Southwestern Railway Company at Keevil in Monroe County, Arkansas, for shipment to Helena, Arkansas.   The said railway company as the initial carrier issued a bill of lading to appellant, and the consignment was to be transported over that road from Keevil to Clarendon and thence over the line of the Missouri Pacific Railroad Company to Helena. Both of the railroad companies were joined as defendants, also the Director General.   It appears, however, from the testimony in the case that the transportation originated after the railroad lines passed from under government' control.   The case· was tried before a jury, but the court directed a verdict in favor of appellee.

The right of appellant to maintain the suit is challenged on the ground that he ceased to be the owner of the potatoes when he delivered them to the carrier for transportation.   The evidence was sufficient to justify a finding that, while the potatoes were delivered to the carrier pursuant to a contract of sale, yet the intention of the parties was that the transportation should be completed and the delivery made to the consignee before the sale was consummated.   It is a question from the evidence what the intention of the parties was, and it should have been left to the jury to determine that question, instead of taking it away from them by a peremptory instruction.   *Gibson* v. *Inman Packet Co.,* 111 Ark. 521; *Kansas City Southern Ry. Co.* v. *Mabry,* 112 Ark. 110; *Warren & Ouachita Valley Ry. Co.* v. *Southern Lumber Co.,* 115 Ark. 221; *Georgia Marble Finishing Works* v. *Minor,* 128 Ark. 124.

It is next contended that appellant should not be permitted to recover because, according to the undisputed evidence, notice of the loss was not given in com-

pliance with the stipulation in the bill of lading. According to the language of the stipulation, there is an exception in the requirement for notice "where the loss, damage or injury complained of is due to delay or damage while being loaded or unloaded, or damaged in transit by carelessness or negligence." It is seen from the language of this stipulation that what is generally known as transit claims are exempted from the requirements as to notice. Appellant's claim in this instance falls within that class, and therefore notice was not required.

Finally, it is contended that there is no evidence in the record tending to show that the potatoes were injured while in the hands of the carrier and before delivery to the consignee. The potatoes were delivered by appellant to the carrier on the afternoon of March 18, 1920, and bill of lading was issued on that day. The shipment moved over the line of the initial carrier from Keevil to Clarendon on March 19. There was an indorsement on the bill of lading in the following words: "Received in good condition for account of consignee, 3-24, 1920." (Signed) "Frank Frison." There is no testimony in the record tending to show who Frank Frison was, or whether or not he was authorized to receive the potatoes and accept them for the consignee. Another witness, Mr. Lovejoy, introduced by appellant, testified that he was in Helena on March 27, 1920, and was present at the place of business of the consignee when the potatoes were received from the delivering carrier, and that he found them to be in a wet, soggy and damaged condition. He testified that all of the potatoes he saw were in bad condition, and the clear inference from the testimony is that they were worthless. This witness was a little bit uncertain as to the precise date that he saw the potatoes, but he testified that they were being received at that time from the carrier by the consignee. Other testimony adduced by appellant established the fact that the potatoes were in

good condition when delivered to the carrier. We think there was legally sufficient evidence to submit to the jury the issue whether or not the potatoes were injured while in the hands of the carrier. The evidence was abundantly sufficient to show that there was unnecessary delay in transporting them from Keevil to Helena, which is only a short distance, and that the potatoes were exposed so as to become wet while in transit. These issues should have been submitted to the jury.

In view of the new trial, attention should be called to the fact that under the statute, Crawford & Moses' Digest, § 924, the initial carrier is liable for damages occurring, regardless of the particular line on which the injury occurred.

Reversed and remanded for a new trial.