ST. LOUIS-SAN FRANCISCO RAILWAY CO. *v.* ALLISON.

Opinion delivered April 9, 1923.

1.  CARRIERS—LOSS OF FREIGHT—WHO MAY SUE.—In an action by a shipper against a carrier to recover damages for failure to deliver freight shipped to consignor's order, as the title never passed from the consignor, he was entitled to recover the value of the shipment.

2.  CARRIERS—FAILURE TO DELIVER FREIGHT—PRESUMPTION.—Where a shipper proves that a shipment of freight was never delivered at the destination designated in the bill of lading, the presumption arises that it was lost by reason of the negligence of the carrier, and the burden was on the initial carrier to show to ·the contrary.

Appeal from Sebastian Circuit Court, Fort Smith District; *John Brizzolara,* Judge; affirmed.

*W. F. Evans,* and *Warner, Hardin & Warner,* for appellant.

Notwithstanding shipper consigned shipment to himself, or rather his company, the invoice showed to whom it had been sold, and it was not intended to be a shipper's order shipment, the lumber being sold on credit and no draft attached to the bill of lading, and the title passed to the purchaser, the Lang-Body Company, upon delivery to the carrier at Garvin, Oklahoma, and plaintiff cannot maintain action for failure to deliver. 121 Ark. 284; 115 Ark. 221; 112 Ark. 165; 111 Ark. 521; 105 Ark. 53. Moreover, the bill of lading was sent to the Lang-Body Company, the purchaser, and amounted to delivery, and the title passed. 120 Ark. 491; 74 Ark. 482. Court erred in refusing to direct

a verdict for defendant. Court erred also in giving instruction numbered 2, requested by plaintiff, and in refusing to give defendant's requested instruction numbered 2. The court was requested by this instruction 2 to submit to the jury the question of whether or not the sale was conditional, and instruction 1 ignored the issue entirely. 93 Ark. 564; 137 Ark. 530; 148 Ark. 132. The question of intent of the parties should have been submitted to the jury. 82 Ark. 86; 106 Ark. 571; 126 Ark. 369; 144 Ark. 278. No negligence of carrier in handling the shipment of lumber, and court erred in not giving its requested instruction 3.

*A. A. McDonald,* for appellee.

.Case should be dismissed for failure to comply with Rule 9. The case of *U. S. Express Co.* v. *Burdick,* 121 Ark. 284, not in point. While the invoice shows "Sold to Lang-Body Co., Cleveland, Ohio, shipped to Allison Hardwood Lumber Co., West 106 St., Cleveland, Ohio," the bill of lading shows "Consigned Allison Hardwood Lumber Co., destination Cleveland, Ohio," showing that shipper was to control the shipment, and that it was sold to be delivered at destination. Not having been delivered, it was the property of plaintiff. 115 Ark. 221 and 120 Ark. 487 distinguished. Instruction No. 2 of appellant was properly refused, there being no evidence upon which it could be based. Instruction No. 1 was a correct declaration of the law. 1 Roberts, Federal Liabilities of Carriers, 572, par. 328; U. S. Compiled Statutes 1918, Compact Edition, par. 8604-A. A clear case of negligence was shown, but the failure to deliver was sufficient to show negligence.

*W. F. Evans, Warner, Hardin & Warner,* in reply.

Additional abstract filed, notwithstanding we think our abstract was a compliance with Rule 9. *St. L. & S. F. Ry. Co.,* v. *Newman,* 105 Ark. 63, holds too much of record not to be copied.

WOOD, J. The appellee instituted this action against the appellant to recover the sum of $2,789.95 for the al-

leged failure of appellant to deliver a carload of ash lumber which the appellee alleged he shipped over appellant's line from Garvin, Oklahoma, on July 21, 1920, to be delivered to Lang-Body Company at West 106 Street, Cleveland, Ohio. The appellant denied all the material allegations of the complaint.

Allison testified that a carload of lumber was sold by the Bacon Lumber Company, a corporation of Cleveland, Ohio, the agent of the appellee, to the Lang-Body Company of Cleveland, Ohio. The sale was evidenced by a written order, that he shipped the carload of lumber on July 21, 1920. The lumber was consigned to the appellee at Cleveland, Ohio, and was described in the bill of lading as "one car of ash lumber," with a notation thereon following the description "W. 106 St. N. Y. C. delivery." In the next day or two Allison mailed the bill of lading to the Lang-Body Company, and on the same day he billed out another car, which was delivered within three weeks, while the car is controversy was never delivered. The invoice price of the lumber, $2,789.95, was its fair market price. The freight and war tax amounted to $227.96. The witness then testified as to the efforts he made, after ascertaining the car had not been delivered, to have the same delivered to the Lang-Body Company. He wrote to the Lang-Body Company and the Bacon Lumber Company, requesting them to get in touch with the railroad company and have the car delivered. He also wrote the agent of the New York Central Railroad Company requesting the delivery of the car. He was advised on February 8, 1921, that the car was in storage at Cleveland, Ohio. He also testified that he requested the appellant to trace the car something like 30 or 60 days after the car was shipped.

C. D. Mowen, who was agent of the traffic bureau for the cities of Van Buren and Fort Smith, testified that he was familiar with the schedules and time necessary to ship freights to different points, and that the time reasonably necessary to carry the car from Garvin,

Oklahoma, to Cleveland, Ohio, should not exceed nine days.

There was testimony on behalf of the appellee tending to show the efforts put forth by the Bacon Lumber Company and also the Lang-Body Company, after the car failed to reach its destination within a reasonable time, to locate and have the same delivered. It was shown by the freight agent of the New York Central at Cleveland, Ohio, that that road did not handle the car in controversy. It received a wire from the appellee as early as August 20, 1920, advising that the car in controversy should go to the Lang-Body Company. Lang testified, among other things, that the Lang-Body Company, after receiving the bill of lading for the car on August 3, 1920, made demand upon the railroad companies for the delivery of the car in controversy, and the same was not delivered, and thereafter it endeavored several times to have the railroad companies trace the car as late as Nov. 18, 1920, which they promised to do, but the car was never located.

There was testimony in the record showing that as late as January 24, 1921, the appellee was endeavoring to have the car located. The other testimony relates to the efforts that the appellee put forth to have the car of lumber sold after ascertaining that it was in storage in Cleveland. These efforts failed, for, as one of the witnesses testified, it was found that the car was not worth the freight, cartage and storage charges. It was shown by the testimony that the "NYC delivery" meant "New York Central delivery." It was shown on the part of the appellant that the car in controversy was received by the General Storage Company in Cleveland, Ohio, on October 5, 1920, for account of the Big Four Railroad Company. Notices were sent to the appellee at Cleveland and also at Garvin, Oklahoma, and no communication was received from the appellee pertaining to the car. The car was sold on May 20, 1921, at a total loss to the storage company amounting to $196.25.

One of the witnesses for the appellant testified that he was the disposition clerk of the C. C. C. & St. L. Ry. Co. at Linndale, Ohio, in September, 1920, and that the car in controversy arrived at Linndale September 13, 1920, consigned to the appellee, and carded "Hold for disposition on arrival account. Consignee unknown." Post-card notice of the arrival of the car was sent to the appellee. The car was at the Linndale yards from September 14 until September 29, and was reported daily.

Another witness for the appellant testified that he was the freight agent of C. C. C. & St. L. Ry. Co. at Cleveland, Ohio, and was familiar with the tracks serving the Lang-Body Company at Cleveland. It was on property owned by that company, and was reached through a New York Central industrial track about a mile long, which served a number of industries south of W. 106th Street. These industrial companies were served through the lead track by private sidings. The Lang-Body Company was one of them. When cars are consigned to it, they are placed on a private track of that company. Cars could not be placed on the Lang-Body Company's track or any other private track on the New York Central unless consigned to a firm served by those particular tracks. There is no team track on the New York Central known as W. 106th Street. The car in controversy was received at Linndale yard, which was the outer yard for Cleveland station of the Big Four, on September 13, 1920. The waybill on the car showed that it was consigned to the appellee. A postal notice, as well as a letter of September 17, was sent to the consignee asking for disposition. On September 23 report was made showing the car on hand, undelivered. The car was then put in general storage, and the appellee was notified by letter of September 27 of that fact. These witnesses testified that they had no knowledge of any inquiries from the Lang-Body Company, or the Bacon or Allison companies, regarding the car while it was held at Linndale.

In rebuttal, Allison testified that he shipped another car of lumber from Garvin, Oklahoma, on the same date, consigned to the same party in the same way as the car in question, and that this car had been delivered within three weeks.

Among other instructions the court, at the request of the appellee, gave the following:

"If you find from a preponderance of the testimony that the defendant railroad company accepted from the plaintiff the car of ash lumber in controversy, at its station at Garvin, Oklahoma, for shipment to Allison Hardwood Lumber Company at West 106th Street, Cleveland, Ohio, New York Central delivery, that is, to be delivered by the defendant company to connecting carriers, by them delivered to the New York Central Railroad for delivery at said address at Cleveland, Ohio, and that said defendant company issued to plaintiff its receipt, or bill of lading, showing such a contract of delivery, and that said car of ash lumber was not delivered as agreed in said contract or bill of lading, your verdict should be for the plaintiff for the value of said car of lumber, less the freight charges from Garvin, Oklahoma, to said address at Cleveland, Ohio."

The court refused appellant's prayer for instruction as follows:

"If you find from the evidence that plaintiff delivered to the defendant railroad company at Garvin, Oklahoma, the car of lumber involved in this case, pursuant to an order from the Lang-Body Company, to ship said car of lumber to Cleveland, Ohio, and that the sale of said lumber by plaintiff to said Lang-Body Company was unconditional, then the court charges you that the delivery of said lumber by plaintiff to the defendant was in effect the delivery to the Lang-Body Company, and the plaintiff is not entitled to maintain this action to recover the alleged value of said shipment."

The appellant duly excepted to the rulings of the court in granting appellee's prayer for instructions and

in refusing its prayer. The jury returned a verdict in favor of the appellee in the sum of $2,795.98. Judgment was entered in favor of the appellee for that sum, from which is this appeal.

1. The appellant contends, first, that the title to the lumber passed to the Lang-Body Company upon delivery to the appellant at Garvin, Okahoma, for transportation, and that therefore the appellee cannot maintain this action. Appellant cites to support his contention certain of our cases, among them *U. S. Express Co.* v. *Rhea & Co.,* 121 Ark. 284, in which we said: "The law is well settled that the delivery of goods to a common carrier, when made in pursuance of an order to ship, is, in effect, a delivery to the consignee, and the consignor thereafter has neither the title nor the right to the possession of the shipment, nor to maintain an action for damage thereto." In the above case the action was for damage for the loss of one hundred crates of strawberries. The berries were sold f. o. b. Van Buren, the point of origin of the shipment, and were shipped in the purchaser's name direct to the purchaser. But the undisputed testimony in the case at bar shows that the lumber in controversy was purchased by the appellee at Garvin, Oklahoma, and by it sold to the Lang-Body Company at Garvin, Oklahoma, to be delivered by the appellee at Cleveland, Ohio. The testimony of the appellee, which is undisputed, and the bill of lading which evidenced the contract of shipment, shows that the lumber was consigned to the appellee at Cleveland, Ohio, and not to Lang-Body Company. Clearly the undisputed evidence here shows that the sale was conditional, and was not to be complete until the lumber was delivered by the appellee to Lang-Body Company at Cleveland, Ohio. Therefore, while counsel for appellant quote and rely upon sound principles of law announced by this court, the law declared in these cases has no application to the facts of this record.

Since the bill of lading shows that the lumber was consigned to the appellee at Cleveland, and since the order for the lumber and the undisputed testimony shows that the sale was not to be complete until the lumber was delivered by the appellee to the Lang-Body Company at Cleveland, Ohio, we conclude that the trial court was correct in so holding. The lumber here was shipped to the appellee and was subject to its order, and it was the property of the appellee until the same was delivered by the appellee to Lang-Body Company at W. 106th Street, Cleveland, Ohio, which delivery was never made. See *Vehicle Supply Co.* v. *McInturf,* 120 Ark. 491. There is no testimony to warrant the inference that the parties intended the sale to be completed before the delivery of the lumber at W. 106th Street, Cleveland, Ohio. While the bill of lading was sent to the purchaser, this was not for the purpose of passing title to the lumber, but to enable the purchaser to identify the car and procure a delivery thereof.

As we view the evidence, there was no issue for the jury as to what the intention of the parties was, and therefore the court did not err in refusing to submit such an issue to the jury. The case of *Barrett* v. *St. L. I. M. & S. Ry. Co.,* 151 Ark. 215, upon which the appellant relies, is not applicable, because that case is clearly differentiated from this one on the facts. There the plaintiff delivered property to a carrier to be transported to a third person, pursuant to a contract of sale, and we held that it was a question for the jury, under the evidence in that case, as to whether the transportation should be completed and delivery made to the consignee before the sale was consummated. But here the property was not to be transported to a third party as the consignee, but the consignee was the appellee. See *John Moeter & Sons* v. *Paragould Wholesale Grocery Co., ante* p. 128. The order itself for the goods and the testimony of Lang show that the freight was to be paid by the appellee, and the prices were based on condition of delivery at Cleveland. Fur-

thermore, the appellee, as the only party to the contract of shipment, is entitled to maintain this action because, as we have seen, there was no testimony to warrant an inference that the title to the lumber had passed from the appellee to the Lang-Body Company. *W. & O. V. Ry. Co.* v. *So. Lbr. Co.,* 115 Ark. 221, 224.

2. The appellant contends that there was no negligence upon the part of the carrier in handling the shipment of lumber. The testimony bearing upon this issue is fully set forth above, and it clearly shows that the issue of negligence was one for the jury. The instructions asked by the appellant on this issue were argumentative, and the court did not err in refusing to give them. The court correctly submitted the issue under instruction No. 7. (Reporter set forth in note). The jury might have found from the evidence that, on the day the car in controversy was shipped, another car was shipped under bill of lading worded in precisely the same manner, and that this car was delivered to the Lang-Body Company within three weeks. Undoubtedly the jury might have found from the testimony that, if the car in controversy had been delivered by the appellant through its connecting carriers to W. 106th Street, Cleveland, Ohio, as the contract of shipment required, it would have been delivered to and received by the Lang-Body Company. The testimony shows that the sidetrack on the property of the Lang-Body Company was reached through the New York Central industrial lead track. If the car in controversy had been delivered at W. 106th Street, Cleveland, Ohio, as provided in the bill of lading, it would have been de-

---

* No. 7. The court charges you that if the indorsement on the bill of lading in this case, "West 106 Street NYC delivery," was not sufficiently definite to enable the delivering carrier to deliver said car at the place of business of the Lang-Body Company by the exercise of ordinary care, then the failure of the delivering carrier to deliver same at the place of business of the said Lang-Body Company would not entitle the plaintiff to recover herein on account thereof, unless they were given sufficient notice as to place of delivery. (Rep.)

livered as the other car was under similar contract of shipment. At least the jury might have so found. When the appellee proved that the car of lumber had not been delivered to W. 106th Street, Clevland, Ohio, as required by the contract, the presumption was raised that it was lost by reason of the negligence of the appellant, or its agents, and the burden was on appellant to show to the contrary. Roberts on Federal Liability of Carriers, p. 572, sec. 328. This the appellant did not do to the satisfaction of the jury; and its verdict on that issue is conclusive, since there was testimony to warrant it.

We find no error in the rulings of the court. The judgment is therefore correct, and it is affirmed.