RICHARDSON *v.* FOWLER.

Opinion delivered May 29, 1922.

1. SALES—CONSIGNMENT TO SHIPPER'S ORDER—DELIVERY.—Where grain was consigned to shipper's order with directions to notify buyer, a delivery to carrier did not pass title to buyer, there being no evidence that the parties intended such delivery to have that effect.

2. SALES—NECESSITY OF DELIVERY.—Actual or constructive delivery is necessary to complete a sale of chattels.

Appeal from Randolph Circuit Court; *Dene H. Coleman,* on exchange, Judge; reversed.

### STATEMENT OF FACTS.

H. T. Fowler, doing business as the Fowler Commission Company at Kansas City, Mo., sued H. L. Richardson to recover $1,055.83, the balance alleged to be due for the purchase price of a car of corn.

The contract sued on was made by letters and telegrams. On the 12th day of June, 1920, H. L. Richardson sent a telegram from Reyno, Ark., to the Fowler Commission Company at Kansas City, Mo., asking the price on No. 3 mixed corn in bulk and date of delivery. The Fowler Commission Company sent a telegram to Richardson on the same day as follows: "Bulk three mixed corn, dollar ninety Reyno, prompt shipment, answer quick." On the same day the Fowler Commission Company wrote a letter to Richardson in which the above telegram was copied and was confirmed as follows: "Bulk No. 3 mixed corn, dollar ninety per bushel delivered at Reyno." Richardson received the above telegram and letter. Upon receipt of the telegram, Richardson wired back, "Accept your offer any size car at once, @ dollar ninety, c bu."

On June 14, 1920, the plaintiff shipped a car containing 1,625 bushels of No. 3 bulk corn over the St. Louis & San Francisco Railroad to the Fowler Commission Company at Reyno, Ark. This was the only railroad company from Kansas City, Mo., to Reyno, Ark. The

car of No. 3 mixed bulk corn was inspected by a licensed grain inspector of the United States, whose inspection certificate shows the car of corn to have been as represented when delivered to the railroad company.

On June 14, 1920, plaintiff also drew a draft on defendant for the sum of $2,876.61, being the purchase price of the corn at $1.90 per bushel, less the freight from Kansas City, Mo., to Reyno, Ark. The Fowler Commission Company was the consignor in the bill of lading and the car of corn was consigned to order of Fowler Commission Company, destination, Reyno, Ark., notify H. L. Richardson at Reyno, Ark. At the bottom of the bill of lading appears the signature of the agent of the railroad company and also that of Fowler Commission Company as shipper. The car of corn reached Reyno on June 22, 1920. It was hot and souring and had so deteriorated that it would not have graded No. 3 and was worth only about $1.45 per bushel in its damaged condition. Richardson refused to accept the car of corn on account of its damaged condition, and it was shipped back to Kansas City, Mo., to the plaintiff. The plaintiff then sold the car of corn at $1.45 per bushel, which was the best price obtainable in its damaged condition. The plaintiff credited the defendant with the amount received for the car of corn in its damaged condition and sued the defendant for the balance of the purchase money. The defendant refused to accept the corn or to pay the balance of the purchase money and defended the suit on the ground that he had a right to reject the corn because it was damaged when it reached Reyno.

The case was tried before the circuit court sitting as a jury. The court was of the opinion that under the facts recited above, the delivery of the corn by the plaintiff to the carrier at Kansas City, Mo., constituted a delivery to the defendant, and that the defendant was liable for the balance of the purchase price.

Judgment was accordingly rendered in favor of the plaintiff, and the defendant has appealed.

*Schoonover & Jackson,* for appellant.

This case differs from the case of *Roberts Cotton Oil Co.* v. *Grady,* 105 Ark. 53, in that the corn was consigned to the seller's own order, and not to the order of the buyer. Where that is done the carrier is not authorized to treat the person to be notified as a consignee. It cannot, without liability to the true owner of the goods, deliver the consignment to the party to be notified without the production and surrender of the receipt or the bill of lading. 10 C. J. 259; 116 Ark. 198. See also 4 R. C. L. 842, § 294; 125 Tenn. 658. Under the admitted facts appellant is not liable to the appellee in any amount.

*W. L. Pope* and *M. D. Bowers,* for appellee.

Delivery of goods to a common carrier, in pursuance of the directions of the purchaser, is delivery to the purchaser. 44 Ark. 558; 53 *Id.* 200; 79 *Id.* 603; 98 *Id.* 482; 105 *Id.* 56; 106 *Id.* 477; 137 *Id.* 397; 138 *Id.* 350.

HART, J. (after stating the facts).

The law in the case has been settled in favor of the defendant by several decisions of this court, and we cite the following: *Gibson* v. *Inman Packet Co.,* 111 Ark. 521; *Georgia Marble Finishing Works* v. *Minor,* 128 Ark. 124; *McGehee* v. *Yunker & Ronk,* 137 Ark. 397.

In the last mentioned case the court said that the delivery of goods by the seller to the carrier duly consigned to the purchaser constitutes a delivery to the purchaser and consummates the sale. The court also said that the converse of the rule is, that where the seller consigns the shipment to his own order, thus manifesting his intention to reserve his dominion and right of disposition over the property, nothing else appearing to manifest an intention to pass the title, such consignment does not constitute a delivery to the purchaser. In that case the testimony tended to show that the parties agreed on a method of delivery of the potatoes by delivery to the carrier and that the bill of lading was made out in the name of the seller to be changed as soon as the consignment reached Ft. Smith. The court said that the circum-

stances warranted the inference that the parties intended that the sale would be complete, and that the title to the potatoes should pass by delivery to the carrier. In such cases oral proof may be admitted to show the real intention of the parties to the transaction with respect to the question of delivery.

In the present case there is nothing in the record tending to show that the parties agreed that the corn should be consigned to shipper's order when the contract for its purchase was executed. The defendants purchased from the plaintiff a car of corn of a certain grade for a stipulated price. The plaintiff on his own motion consigned the corn to himself at the place where the defendant lived, with directions on the bill of lading to notify the defendant. Thus it will be seen that the plaintiff reserved his dominion over the corn until the purchase price was paid by the defendant. There was no agreement between the parties or anything else in the record tending to show that the plaintiff intended to pass the title to the corn to the defendant when it was delivered to the carrier.

There being nothing in the record from which it could be legally inferred that the sale was complete when the plaintiff delivered the corn to the carrier, the court erred in finding for the plaintiff. A delivery, either actual or constructive, is essential to complete a sale of chattels, and the title does not pass until there has been such a delivery.

As we have said, the plaintiff having consigned the corn to shipper's order without any agreement in this respect with the defendant, and there being nothing else in the record from which it could be legally inferred that plaintiff intended to pass the title when he delivered the corn to the carrier, the circuit court should, as a matter of law, have found for the defendant and rendered judgment accordingly.

Therefore the judgment will be reversed and the cause remanded for a new trial.